# Driggers *v.* Cassady.

### *Statutory Real Action in the Nature of Ejectment.*

1.  *Sale of lands for taxes; validity of; by what law governed.*—The validity of a sale of lands for the payment of delinquent taxes must be determined by the law of force at the time the sale was made.

2.  *Same; jurisdiction of probate court to order, limited, and must appear of record.*—The probate court being a court of limited jurisdiction in the matter of the sale of lands for the payment of delinquent taxes under the provisions of the act of February 12th, 1879 (Pamph. Acts, 1878-9, p. 1), to sustain such a sale, it must affirmatively appear of record that the court had jurisdiction both of the subject-matter and of the person.

3.  *Same; when jurisdiction of the person sufficiently appears.*—A judgment entry of the probate court, subjecting lands of a non-resident to sale for the payment of delinquent taxes, which, following the form prescribed by statute, recites that "notice has been given *as required by law*, is sufficient under the act," although under its express provisions, the land-owner was entitled to notice by publication in a newspaper published in the county in which the lands lie.

4.  *Same; judgment can not be collaterally assailed for mere irregularities.*—While great accuracy is exacted, and strict rules are applied for the protection of the tax-payer, such proceedings are not exempted from the influence of the principle forbidding the collateral assailment of judgments for mere irregularities, or on any ground which could have been pleaded in defense.

5.  *Same; judgment conclusive as to defenses which could have been made on the trial.*—While it would have been a full defense to such a proceeding, if it had been shown on the trial that the tax-payer, or any one for him, had tendered to the collector the full amount of the delinquent taxes due by him, or that he had in his possession, in the county, a sufficient amount of visible personal property, out of which the taxes might have been realized by the collector, the failure to make these defenses in the probate court is conclusive on him and those holding under him; and the judgment of condemnation can not afterwards be collaterally assailed on either of these grounds.

6.  *Lien of the State on lands for taxes; extent of; when tender insufficient.*—The State has, under the statute, a preferred lien on the lands of a tax-payer for all unpaid taxes; and hence, a tender by such tax-payer of the amount of the taxes due on the lands, without including the owner's poll-tax, and the delinquent taxes due on his personal property, is insufficient, and will not constitute a defense to proceedings in the

34

[Driggers v. Cassady.]

probate court to condemn the lands for the payment of the delinquent taxes due by him.

7. *Same; when it attaches; not affected by subsequent alienation.*—The lien of the State for taxes attaches to lands under the statute (Code, § 375) on the first day of January of the year for which they were assessed; and it is not affected by a subsequent alienation, although made prior to a sale for the payment of the taxes, and to a *bona fide* purchaser for value, and without notice.

8. *Sale of lands for taxes; when description sufficient.*—Where lands are described in the assessment list and in the proceedings in the probate court to subject them, under the statute, to sale for the payment of delinquent taxes "as two hundred acres, known as the lands of the late Israel Wiggins, deceased," the description is sufficient, parol evidence being allowed in aid of identification.

9. *Same; when void for uncertainty of description.*—An assessment of lands for taxes, in which the lands are described as "two hundred acres of land lying in Dale county," is void for uncertainty; and proceedings in the probate court to subject the lands to sale for the payment of the taxes, based on such assessment, are also void.

10. *Same; description in assessment list can not be varied.*—The jurisdiction of the probate court in such case depending upon the validity of the assessment, and the statute requiring that the sale must be made according to the description contained in the assessment list, which description must be copied in the docket filed by the collector with the probate judge, a description in such list and docket which renders the assessment void, can not be aided by a more perfect description in the judgment of condemnation, and subsequent proceedings.

APPEAL from Dale Circuit Court.

Tried before Hon. H. D. CLAYTON.

This was a statutory real action in the nature of ejectment, brought by J. W. Cassady against LaFayette Driggers, and was commenced on 17th June, 1881. The cause was tried on issue joined on the plea of not guilty, the trial resulting in a verdict and judgment for the plaintiff. Both parties claimed title under one D. J. Hargrove, the plaintiff, through a tax sale and deed made by the judge of probate in pursuance thereof, and the defendant, by deed from said Hargrove and wife to one W. S. Oates, dated October 18th, 1878, and by subsequent deed from said Oates and wife to defendant. The evidence introduced on the trial, and the exceptions reserved in reference thereto, are sufficiently stated in the opinion. There being no conflict in the evidence, the court charged the jury, at the plaintiff's written request, that if they believed the evidence they must find for him, to which charge the defendant excepted.

The rulings on the evidence and the charge given are here assigned as error.

OATES & COWAN, for appellant.—(No brief came to the hands of the reporter.)

B. F. CASSADY and J. M. CARMICHAEL, *contra.*—(1) The va-

lidity of the proceedings in the Probate Court depended upon the act of February 12th, 1879 (Pamph. Acts, 1878–9, p. 3), then of force.—*Oliver v. Robinson*, 58 Ala. 46. The decree of sale is in exact conformity with the form prescribed by this act, and is therefore sufficient.—*Crimm v. Crawford*, 29 Ala. 623. (2) A judgment rendered by a court having jurisdiction can not be collaterally impeached.—2 Brick. Dig. p. 156, § 6. It is conclusive until reversed.—16 Ala. 271; 18 Ala. 668; 31 Ala. 234. By it both parties and privies are bound. 12 Ala. 482: 23 Ala. 395; 21 Ala. 560. And where the action of the court is dependent upon the ascertainment of a particular fact, its action is conclusive of the determination of that fact.—*Hamner v. Mason*, 24 Ala. 480. (3) The return by the collector of a list of the lands on which the taxes are unpaid, and the giving of notice required by the statute, give the court jurisdiction.—Pamph. Acts, 1878–9, pp. 3–5. If the tax-payer has any defense to the proceedings he must appear and make it; and if he fails to do so, the judgment ordering the lands sold is conclusive of such defense.—*Gunn v. Howell*, 27 Ala. 663; *Mervine v. Parker*, 18 Ala. 241; 2 Brick. Dig. p. 145, § 205. (4) The State had a preferred lien on the lands for the taxes assessed against them, and also for other taxes due by Hargrove. The tender made by him was, therefore, insufficient.—Code, 1876, § 375. (5) The description of the lands in the proceedings in the Probate Court, "two hundred acres of land, known as the lands of the late Israel Wiggins, deceased," was sufficient, because they could be thereby known or identified.—Code, 1876, Subd. 5, § 370.

SOMERVILLE, J.—The validity of tax sales must be governed by the law which is in force at the time of the sale. *Oliver v. Robinson*, 58 Ala. 46. The present sale took place in May, 1879, under a proceeding commenced before the probate judge of Dale county on the first of March of the same year. Its purpose was to enforce the collection of certain delinquent taxes due for the year 1878, and assessed against a certain tract of land, as the property of one Hargrove. The validity of the whole proceeding must therefore be tested by the act approved February 12, 1879, entitled "An Act to provide for the sale of land and other real estate for delinquent taxes, and the redemption thereof."—Acts 1878-79, pp. 1-8.

It is insisted that the judgment of the probate court condemning the lands to sale, bearing date April 14, 1879, fails to show that this court had proper jurisdiction of the subject-matter and of the party, and being a court of limited jurisdiction and of special statutory powers in this particular matter, the judgment of sale is void, because of this failure to recite

the necessary jurisdictional facts. There can be no doubt of the correctness of this rule, or of its application to proceedings of this character. The facts necessary to confer jurisdiction on the probate court under the above act, in any proceeding to enforce the collection of delinquent taxes, must appear affirmatively in the record.—Burroughs on Tax., 281, 282; *Young v. Lorain*, 11 Ill. 637; *Gunn v. Howell*, 27 Ala. 663. The particular defect contended for is the alleged failure of the judgment to show that the land-owner had proper and legal *notice* of the pendency of the proceeding on which the judgment is based. Being a non-resident, he was entitled, under the express provisions of the act, to notice by publication in a newspaper, if one was published in the county.—Acts 1878-79, p. 5, § 4, *supra.* The docket of the tax collector, containing the delinquent list, which is required by the act to be delivered into the office of the probate judge by March first of each year, is shown to contain all the essential entries and recitals necessary to confer jurisdiction of the *subject-matter*, and was delivered to the proper officer within the requisite time. The contention is only as to *jurisdiction over the person* of the owner. The judgment recites that "notice has been given *as required by law*," and it is insisted that this is the averment of a legal conclusion, and not of a *fact*, and that the fact of notice by publication in a newspaper should have been particularly stated. Whatever force there may have been in the suggestion under other circumstances, a full answer to it, in our opinion, is, that *the form of the judgment is prescribed by the statute itself*, and this form has been accurately followed in the present proceedings. If the law-making power see fit to declare, by legislative enactment, that such a recital of notice shall be sufficient, as they have done, we can not see upon what ground the enactment can be assailed, or pronounced invalid or unconstitutional by the courts.—*Davis v. State*, 68 Ala. 58. The forms of indictment and of civil pleadings, prescribed in our Code, are in many instances the averments of mere legal conclusions, and yet they have never been adjudged to be insufficient on this ground. The form of a judgment entry, prescribed by statute, would seem to rest upon a still more impregnable basis.—Burroughs on Tax. 285; *Morrill v. Swartz*, 39 Ill. 108; *Taylor v. People*, 2 Gilman, 349.

The probate court thus had jurisdiction of both the *subject-matter* and of *the person* of the land-owner, according to the recitals in the record of the particular cause, and such being the fact, the rule in ordinary cases is, that although the record may abound with reversible irregularities, fatal on appeal, it is *invulnerable to collateral attack*, as is here attempted.—2 Brick.

[Driggers v. Cassady.]

Dig. 158, § 20; Burroughs on Tax. 285; *Thatcher v. Powell,* 6 Wheat. 119.

It is no objection to the application of this principle that the present is a proceeding to enforce the collection of delinquent *taxes.* While great accuracy is exacted in all such proceedings, and strict rules are applied for the protection of the tax-payer, this principle, forbidding the collateral assailment of judgments, has often been successfully invoked in actions of this nature. It has accordingly been decided that there is no sound reason why judicial proceedings for the enforcement of taxes should be exempted from its influence.—Burroughs on Tax. 285–6; Freeman on Judg., § 135; *Wellshear v. Kelley,* 69 Mo. 343; *Eitel v. Foote,* 39 Cal. 439.

The statute expressly provided that the judgment of condemnation should be rendered in such cases only where the tax-payer *interposed no defense.* It would certainly have constituted a full defense to the proceeding, if it had been shown on the trial that the tax-payer, or any one for him, had *tendered to the collector the full amount of the delinquent taxes* due by the owner; or that the owner had in his possession, in the county, a *sufficient amount of visible personal property,* out of which his unpaid taxes might have been realized by the tax collector.—Code, 1876, § 470. The act under consideration must have contemplated defenses of this nature, and the failure of the tax-payer to appear and interpose them on the trial, would be conclusive on him and his privies in estate holding title under him. In such cases, where the record *prima facie* shows jurisdiction, the judgment of the probate court can not be collaterally attacked on any ground which could have been pleaded in defense on the trial.—Freeman on Judg. § 135; *Cadmus v. Jackson,* 52 Penn. St. 295. The court, for this reason, properly excluded from the jury proof of the fact that Hargrove, the owner of the land, possessed a sufficient amount of personal property in the county, out of which the taxes of the delinquent could have been collected. The contrary averment was recited in the judgment of the court, and was sustained by the sworn return of the tax collector, made as required by the statute, thus placing this particular fact beyond the pale of collateral contradiction. So there was no error in refusing to let the defendant prove the tender to the tax collector of "the amount of taxes *due on the said land,*" exclusive of the owner's poll-tax and his delinquent taxes due on personal property. This alleged tender was not only incompetent evidence for the reason above mentioned—that it constituted a mere *matter of defense* to the rendition of the judgment—but also very clearly for another reason. The State had a preferred lien on the property for the *entire unpaid taxes* of the delinquent, Har-

grove, due for the year 1878, and the offer to pay should have included this entire amount, and should not have been limited to the tax on the land merely.—Code, 1876, § 375.

The alienation of the land by the owner, Hargrove, although made prior to the date of sale, could not affect the lien of the State for delinquent taxes. The sale to Oates, made in October, 1878, *was after this lien had accrued*, which, in point of time, is fixed by statute to be the first of January of the year for which the taxes were assessed.—Code, § 375. Such a lien overrides any title acquired by purchasers, whether with or without notice, and in however good faith it may have been made, and for whatever value. It follows the land in the hands of the vendee, all persons being chargeable with a knowledge of its existence. If any other rule were allowed to prevail, the State might be subjected to intolerable embarrassments in the prompt collection of its revenues, effected through the fraud and artifices of tax delinquents, making sales of their effects so as to evade the payment of their honest taxes.—Burroughs on Tax. 275–276; *Gledney v. Deavors*, 8 Ga. 479; *Kahl v. Love*, 37 N. J. (Law) 5; *Dunlap v. County of Gallatin*, 15 Ill. 7.

The land in controversy is described in the assessment list and other subsequent proceedings as "two hundred acres of land, *known as the lands of the late Israel Wiggins, deceased.*" It is objected that this description is void for uncertainty, and that for this reason no title was conferred on the purchaser at the tax sale. The object of all description is designation and identification. The usual rule, therefore, is, that the lands assessed must be described with such accuracy and certainty as to be capable of an easy identification.—Burroughs on Tax. 204–205. The statutory requirement is in substance the same, any description of a subdivision being sufficient by which it "may be known or identified."—Code, §§ 362, 370.

We are of opinion that, under this rule, the description is sufficiently accurate. It presents the familiar case of a mere indefinite description, capable of being rendered certain, which is always open to more exact identification by the aid of parol evidence. From the earliest era of the common law, the grant of an estate, under the designation simply of "Black-acre," was always considered sufficiently definite. In *Baucum v. George*, 65 Ala. 259, the premises conveyed by deed were considered by this court as described with sufficient accuracy under the name of "*The Douglas Gold Mine*, in Talladega county, Alabama." In *Macklem v. Blake*, 19 Wisc. 397, the following description of land in a tax deed was sustained, viz: Certain described premises lying in "Washington city, now called Port Washington." The name in the recorded plat was shown to be "Wisconsin city," but parol evidence was admitted

[Driggers v. Cassady.]

to show that the locality was familiarly known as "Washington city." In *Smith v. Messer*, 17 N. H. 420, a description in an advertisement for a tax sale was adjudged sufficient, which read as follows: "*A piece of land set off by E. C. on settlers' lot No. 5*, 128 rods long and 38 rods wide—25 acres." Such descriptions are sustained on the strength of the maxim, *Id certum est quod certum reddi potest*—parol evidence being allowed in aid of identification, thus rendering that certain which might otherwise be ambiguous.—*Ellis v. Martin*, 60 Ala. 394; *Clements v. Pearce*, 63 Ala. 284; 2 Whart. Ev. §§ 942, 943; Burroughs on Tax. 207; *People v. Leet*, 23 Cal. 162; *People v. Crockett*, 33 Cal. 150.

We discover no error in the rulings of the court, and its judgment must be affirmed.

On a subsequent day of the term an application for a rehearing was filed, the grounds of which are sufficiently stated in the following response:

SOMERVILLE, J.—We are of opinion that the application for a rehearing in this cause should be granted. The original opinion is based upon the assumption that the lands were described throughout the entire tax proceedings, as two hundred acres of land, known as the lands of the late Israel Wiggins, deceased." The case was originally argued upon this theory.

A closer examination of the record discloses the fact that the lands were described in the assessment list, or "docket" filed with the probate judge, only as "*two hundred acres of land, lying in Dale county*," the more perfect description having been added in the progress of the subsequent proceedings.

It is true that the assessment books themselves are not in evidence, but the act approved February 12, 1879, requires the tax collector to "enter into a substantially bound book, in the manner usual in docketing causes for trial in the circuit courts," each parcel of real estate, "*describing it* in the same manner it was *assessed*," with the amount of the unpaid taxes due. This book or docket the collector is required to deliver into the office of the probate judge by the first of March, and it is made the basis of all the subsequent proceedings. The notices to delinquents, the advertisements of sale, the certificates of purchase, and the tax deeds signed by the probate judge, all have antecedent reference to it.—Acts 1878–79, pp. 3 and 4, §§ 1 and 2.

Under the rules laid down in the opinion, and generally recognized by the authorities, the description given in the docket, or assessment list is clearly insufficient. It is impossible to locate these lands by a description so general and

[Harris v. Harris.]

indefinite as "two hundred acres of land, lying in Dale county."
It is void for uncertainty. Cooley on Tax. 286, note 4 and
cases cited.

The probate court, therefore, had no jurisdiction of the
subject-matter. The assessment, which is the foundation of
the entire tax proceedings, being void, the proceedings them-
selves can not stand. This invalidity runs through and vitiates
all these subsequent proceedings, including, of course, the tax
sale itself.—Cooley on Tax. 258, 362; *Yenda v. Wheeler*,
9 Tex. 408. The sale was required to be according to the de-
scription given in the assessment list, or, what is the same thing,
in the docket filed with the probate judge. No variance from
this is permitted, the reason being, the authority or jurisdiction
of the court to act in the premises depends upon the validity
of this primary and fundamental proceeding.—Blackwell's
Tax Titles, *281, 282; Burrough's on Tax. 281, 282.

The judgment is reversed and the cause remanded.